**H. Thomas FOLEY, Reverend**

v.

**PRESBYTERIAN MINISTERS' FUND.**

**Civ. A. No. 90–1053.**

United States District Court,
E.D. Pennsylvania.

Sept. 17, 1990.

Alan B. Epstein, Philadelphia, Pa., for plaintiff.

Brenda C. Kinney, Michael J. Boni, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff H. Thomas Foley initiated this action against his former employer, the Presbyterian Ministers' Fund (Fund). His complaint alleges violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (Count I), the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.* (Count II), and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (Count III). His complaint also alleges violations of Pennsylvania common law, including

wrongful discharge (Count IV) and intentional infliction of emotional distress (Count V). Now before this court is defendant's motion for partial dismissal of plaintiff's complaint.[1]

*Factual Background*

According to the complaint, plaintiff began working for the Fund as a salesperson in 1977 and proved himself an excellent employee who eventually earned several significant promotions, culminating with his appointment to the position of Vice–President in charge of field operations in July of 1986. After relocating to Philadelphia to fill his new position at the Fund's national headquarters, plaintiff was informed in April of 1987 that he would not be permitted to interview for a newly created position designed to replace his current job.

Plaintiff was next informed, approximately one month later, that he would be transferred to the Baltimore office to assume the position of Vice–President and Regional Sales Manager for the Mid–Atlantic Region. Plaintiff accepted his new assignment with objection. Apparently, he was only four months from the vesting of his pension and took the position in Baltimore only to protect his financial future. On December 31, 1988, at the age of sixty-three, plaintiff was terminated without good cause. The termination not only resulted in a significant loss of earnings but also caused plaintiff a substantial decrease in the pension he would have received had he remained in defendant's employ.

The complaint maintains that defendant made a general practice of discriminating against older employees, and that the treatment plaintiff received was part of this larger regime.

*Moot Contentions*

With one exception, all of the issues originally raised by defendant's motion to dismiss have become moot in the course of the briefing:

1) Defendant originally moved to dismiss paragraphs 20 and 21 of plaintiff's complaint "to the extent" that such paragraphs purport to state independent causes of action, *see* brief in support of motion to dismiss, p. 4, but plaintiff has since confirmed that such paragraphs are included as factual allegations and not as separate claims for relief.[2]

2) Defendant originally moved to dismiss plaintiff's jury demand under Count III, but plaintiff has since withdrawn its jury demand under that Count.[3]

3) Defendant originally moved to dismiss Count V, but plaintiff has since withdrawn that Count.[4]

---

**1.** Defendant's motion was formally filed as a "Motion to Dismiss." However, this title is somewhat misleading as defendant seeks dismissal only in part.

**2.** These paragraphs aver as follows:

20. In or about April, 1987, Reverend Foley was informed by the Senior Vice–President for Sales and Marketing that he would not be permitted to interview for the position of National Sales Vice–President and Manager, a newly created position which would replace the position he held as Vice–President of Field Operations.

21. On or about May 13, 1987, Reverend Foley was informed that he would be transferred to the Baltimore office of Defendant as Vice–President and Regional Sales Manager for the Mid–Atlantic Region; Reverend Foley assumed this position with objection, based upon the fact that he was only four months from the vesting of his pension and was accordingly required to assume the position in Baltimore to protect his financial future.

Within the general framework of plaintiff's complaint, these paragraphs are listed under the heading of "Factual Allegations." They are not specifically restated in the context of any one Count, but are incorporated by reference throughout plaintiff's complaint.

**3.** Defendant contends that there is no jury right available under ERISA. See *Pane v. RCA Corporation*, 868 F.2d 631 (3d Cir.1989); but see *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988). Plaintiff does not concede this point as a matter of law, but acquiesces nevertheless. See plaintiff's response, p. 13. Plaintiff does not withdraw its jury demand with regard to any other count.

**4.** Defendant contends that the cause of action for intentional infliction of emotional distress, alleged in Count V, is precluded by statute and that, in any event, the conduct at issue falls short of the level of "outrageousness" necessary to sustain such a claim. See *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 190–91, 527 A.2d 988, 991–92 (1987).

*Wrongful Discharge*

■ The foregoing having been deemed moot, the only remaining dispute concerns Count IV, which undertakes to state a cause of action for wrongful discharge under the common law of Pennsylvania, as follows:

> 41. Defendant violated the public policy of the Commonwealth of Pennsylvania in its actions against plaintiff as aforesaid and that these actions were done with the specific intent to harm plaintiff.

Defendant contends that Pennsylvania does not recognize an action at common law for the termination of an at-will employment relationship, and that, even if there were such a cause of action, available statutory remedies preclude plaintiff from pursuing relief under the common law. See *Phillips v. Babcock & Wilcox*, 349 Pa.Super. 351, 503 A.2d 36 (1986); *Alexander v. Red Star Express Lines of Auburn, Inc.*, 646 F.Supp. 672, 678 (E.D.Pa.1986). Plaintiff responds that Pennsylvania will recognize a cause of action for wrongful discharge where, as here, there are allegations of a specific intent to harm the employee. Plaintiff further contends that since there is no statute designed precisely to address and rectify a harm of this nature, an action at common law is not precluded.

As a general matter, Pennsylvania does not recognize a cause of action for the wrongful discharge of an at-will employee. *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989), citing *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). However, there are two exceptions to this general rule: (1) where the discharge violates clear mandates of public policy, (2) where the discharge is intended specifically to cause harm. *Geary v. United States Steel Corp., supra; Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *allocatur denied*, 514 Pa. 619, 521 A.2d 933 (1987);[5] *Mudd v. Hoffman Homes for Youth*, 374 Pa.Super. 522, 543 A.2d 1092, 1094–96 (1988).[6] Plaintiff contends that its claim falls within the scope of the second exception.[7]

In *Mudd v. Hoffman Homes for Youth, supra,* the Pennsylvania Superior Court refused to dismiss a cause of action for wrongful discharge where it was alleged that the employee's termination was designed to prevent her pension benefits from vesting. The court held that such an allegation implies "a malicious desire" and "clearly avers a specific intent on the part of [the employer] to harm" the employee. 543 A.2d at 1096. Similarly, in *Shipkowski v. United States Steel Corp.*, 585 F.Supp. 66 (E.D.Pa.1983), a federal court in this district, applying Pennsylvania law, upheld a cause of action for wrongful discharge where an employee was allegedly terminated approximately one month shy of his eligibility for a retirement plan with substantially more favorable benefits than the plan for which he qualified at the time of his discharge.[8] The court concluded that such an allegation sufficiently averred a specific intent to harm.

In the present case, plaintiff's claim of wrongful discharge is predicated upon a

---

5. The scope of the exception preserving a cause of action for claims alleging a specific intent to harm was elaborated in *Tourville, supra.* There, the Pennsylvania Superior Court held that an action for wrongful discharge may lie wherever an employer's decision to terminate an employee is allegedly motivated by "disinterested malevolence" or by "ulterior purpose." *Id.* 508 A.2d at 1265–66 (applying *Geary, supra*).

6. The holdings reached by the Supreme Court of Pennsylvania in *Clay v. Advanced Computer Applications, supra,* and in *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1989), are not to the contrary. *Clay* simply followed *Geary* in recognizing that there were limited exceptions to the general prohibition against pursuing claims for wrongful discharge at common law, and held that a complainant must proceed through the administrative channels provided by the PHRA before pursuing remedies in a judicial forum. *Paul* also follows *Geary.* Both *Clay* and *Paul* are silent as to the exception provided for causes of action alleging a specific intent to harm.

7. Although the language used in plaintiff's complaint would seem to invoke both exceptions, *see* complaint ¶ 41, *supra,* plaintiff's brief relies exclusively on the second exception to preserve this cause of action.

8. In *Shipkowski,* the court refrained from "dismissing plaintiff's wrongful discharge cause of action because discovery may uncover evidence dispositive of the factual issues in his favor." *Id.* at 68.

similar allegation of a malicious intent on the part of his employer to withhold or diminish his pension income. The complaint alleges that defendant's actions were undertaken "for the purpose of depriving him of his pension and for the purpose of altering his pension and pension rights." Complaint ¶ 2; see also ¶¶ 29, 39, 41, 43.[9] Following *Mudd* and *Shipkowski*, I conclude that plaintiff's claim of wrongful discharge falls under the recognized exception for terminations allegedly involving a specific intent to harm. Plaintiff has properly stated a cause of action under the common law.

■ Plaintiff's common law action is not precluded by statute. Undoubtedly, there are a number of statutes that provide relief for age discrimination and pension abuse, including statutes such as the ADEA, PHRA, and ERISA, which together form the statutory underpinnings of plaintiff's complaint. However, plaintiff's cause of action for wrongful discharge alleges an additional injury that falls beyond the scope of the harm that these statutes are designed to redress. To wit, neither age discrimination statutes nor pension rights statutes are precisely responsive to the element of malicious conduct which underlies plaintiff's cause of action for wrongful discharge with specific intent to harm.

This court has previously recognized that where the interests protected by an anti-discrimination statute differ from those traditionally maintained at common law, such statutes cannot be taken to supplant the relief afforded by the common law. See *Shaffer v. National Can Corp.*, 565 F.Supp. 909, 914 (E.D.Pa.1983).[10] In *Shipkowski, supra*, this court specifically upheld a cause of action for wrongful discharge, which included allegations of a specific intent to harm, in the context of a complaint which also alleged violations of ERISA and of the ADEA, just as the complaint does here.[11]

Accordingly, defendant's motion to dismiss Count IV will be denied in the accompanying order.

For the reasons discussed in accompanying memorandum, it is hereby ORDERED as follows:

(1) defendant's motion to dismiss paragraphs 20 and 21 is DENIED as moot;

(2) plaintiff's jury demand is deemed WITHDRAWN as to Count III, and defendant's motion to dismiss that demand is DENIED as moot;

(3) defendant's motion to dismiss Count IV is DENIED; and

(4) Count V is deemed WITHDRAWN, and defendant's motion to dismiss that Count is DENIED as moot.

**9.** Paragraph 43 is included in Count V, which plaintiff has now withdrawn.

**10.** *Shaffer* upheld a common law cause of action for intentional infliction of emotional distress in the context of a complaint also alleging sexual discrimination in violation of the Pennsylvania Human Rights Act on ground that the interests protected by that statute "are fundamentally different" from those protected by the common law.

**11.** Defendant does not challenge the authority of *Mudd* and *Shipkowski*, nor does it directly refute that Pennsylvania recognizes a cause of action for wrongful discharge where there are allegations of a specific intent to harm. Instead, defendant relies on two cases, *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1977) and *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982), which are not pertinent to the dispute at hand.

In *Bonham*, the Third Circuit held that the PHRA provided the exclusive state remedy for age discrimination and could not be interpreted as implying the creation of a new common law right in addition to that provided by statute. 569 F.2d at 195. Similarly, in *Bruffett*, the Third Circuit concluded that Pennsylvania courts would not "create" a new common law remedy for discrimination on the basis of handicap where plaintiff was "free to utilize" available statutory remedies. 692 F.2d at 919–20.

Neither *Bonham* nor *Bruffett* addresses a situation where, as here, plaintiff seeks to vindicate a recognized common law right in the absence of a parallel statutory remedy. Moreover, unlike the present case, neither *Bonham* nor *Bruffett* involves the allegation of an additional injury beyond that occasioned by discrimination. Both *Bonham* and *Bruffett* are silent as to the exception for causes of action alleging a specific intent to harm.